### DANIEL B. LUTHER vs. JOHN HAILE.

L. and his wife P. agreed to a separation, and L. conveyed by deed certain real estate to one B. in trust for said P., her heirs, executors, administrators, and assigns, and for her and their use and behoof forever. P. made a will in 1864, giving this property to her daughter H. and directing said trustee to convey to her. P. died in 1868, and B. in 1869 conveyed the real estate back to L. *Held*, that the trust must be considered as executed in the next taker after the death of P., to wit., H., and that the deed from B., the trustee, to L., conveyed nothing to the said L.

TRESPASS AND EJECTMENT to recover possession of a certain piece of real estate, situate in the town of Warren, R. I. A jury trial having been waived, the case was submitted to the court both in fact and law. At the trial it appeared that prior to the 14th day of August, A. D. 1860, the plaintiff owned said premises, and that on said last named date he sold the same to James

C. Blake, his executors and administrators, in trust, for the wife of the plaintiff, Polly Luther, her heirs, executors, administrators, and assigns, and for her and their use and behoof forever. In the deed of said premises from said plaintiff to said Blake, trustee, the plaintiff covenanted to warrant and defend the same to the said. James C. Blake, trustee to the said Polly Luther, forever against the lawful claims and demands of all persons.

On the same day the plaintiff entered into an agreement with his wife and with said Blake, who was agreed upon as trustee for his wife, Polly Luther; which agreement stated in the commencement that said plaintiff " has given, granted, sold, and assigned certain real and personal property to the said James C. Blake, to hold in trust for the said Polly Luther, her heirs and assigns."

In said agreement he also agreed that said Polly Luther might live separate and carry on business, &c., notwithstanding her then present coverture, and as if she were a *feme sole* and unmarried. And also that he would not at any time thereafter claim or demand any property of any kind or description, which said Polly Luther had at the date thereof in her custody or possession, and that she should and might enjoy and absolutely dispose of the same as if she were a *feme sole* and unmarried.

The said. Polly Luther, by said agreement, agreed to accept said premises amongst other property in full satisfaction for her support and maintenance, and all alimony whatsoever during her coverture, and in full satisfaction of and in the place and stead of any and all right of dower which she might or should be entitled to at any future time.

It was further agreed, upon consideration of the transfer of said premises and other property from said plaintiff to said Blake as trustee, that said Polly Luther should maintain one Harriet Luther, daughter of said plaintiff, until she should arrive at the age of twenty-one years, unless she should sooner marry. An attachment of said premises and other property was also provided for in case the conditions of said agreement were not fulfilled on the part of the said Polly Luther.

On the 15th day of September, 1864, Polly Luther made her last will and testament, by which she bequeathed to said Harriet Luther said premises. Said will was duly probated on the 6th day of February, 1869.

Previous to the commencement of this suit said Harriet Luther had married the defendant.

On the 28th day of July, 1869, James C. Blake, trustee, executed a quitclaim deed of the premises in dispute to Daniel B. Luther, the plaintiff; on the same day the deed was duly acknowledged and recorded in the Records of Land Evidence in said Warren. Also at the same date, James C. Blake, trustee, executed to the plaintiff a bill of sale of all the personal estate held in trust. John Haile, the defendant, being in possession of the real estate sued for, on said 28th day of July, after said deed was recorded as aforesaid, the plaintiff gave him written notice to quit the premises on the 19th day of August next ensuing. On the defendant's refusing to deliver possession to the plaintiff, suit was instituted as aforesaid.

*W. H. Greene,* for the plaintiff. I. In and by the deed of Daniel B. Luther to James C. Blake, trustee, the fee of the land described was not intended to be conveyed, and was not conveyed, but an estate simply for the life of said Blake, or possibly for the life of Polly Luther, was thereby created. 2 Black. Com. pp. *379, *381; *Russell* v. *Coffin,* 8 Pick. 143; *Gale* v. *Coburn,* 18 Pick. 397; *Nightingale et al.* v. *Hidden et al.* 7 R. I. 131. Where there is a clear and undoubted grant, and afterwards words which are repugnant or contradictory, the latter may be rejected. *Wade* v. *Howard,* 11 Pick. 289; 2 Black. Com. p. *381.

II. By the deed in question, a special trust was created, and the legal estate and first use were vested in the trustee, James C. Blake, and by the conveyance of the latter to the plaintiff the legal title to the estate was vested in him, and thereby the right of this action accrued, and that, whether the trustee made the conveyance in violation of his trust or not. *Nightingale et al.* v. *Hidden et al.* 7 R. I. 131; Hill on Trustees, p. *282; Perry on Trusts, §§ 334, 335.

III. But if it be conceded that James C. Blake was only a medium of the transfer, and that no special trust was created, but a mere use, which was executed by the statute, so as to vest the legal estate in fee in the wife, Polly Luther, then the husband, the plaintiff, is entitled to his estate by the curtesy, unless he has done some act to bar that estate. *Hubbard et al.* v. *Apthorp,* 3

Cush. 419; Washb. Real Prop. *140; *Wallace* v. *Bassett*, 41 Barb. S. C. 92; *Martin & Goff* v. *Pepall*, 6 R. I. 94.

Bearing in mind that the deed of the real estate and the deed of separation were executed on the same day and at the same interview, it does not appear from an inspection of the instruments that there was any intent on the part of the husband to exclude his marital rights in that estate, much less that *clear intent* which is required by the law. But were it conceded that the husband apparently intended to empower the wife to make a disposition of the property, still there are difficulties in the way ; she never lawfully executed the power so as to exclude the husband from the curtesy. Married women cannot at the common law make a valid will; they are empowered by our statute to make wills, but not so as to impair the curtesy. Rev. Stat. chap. 136, §§ 12, 13. Nor is a general assent on the husband's part to his wife making a will, regarded as sufficient. It should be shown that he has consented to the particular will. *Rex* v. *Bettersworth*, 2 Stra. 891 ; *Cutler* v. `Butler*, 5 Foster, 357.

*Turner*, for the defendant. I. The plaintiff parted with his entire interest as owner of said premises in conveying the same to James C. Blake, trustee.

. II. In construing the rights of the parties the agreement between the plaintiff, his wife, and Blake is to be considered ; and by a fair interpretation of the meaning and intention of the plaintiff when he executed the deed and the agreement, he has no claim as tenant by the curtesy.

III. All the conditions of the agreement were fully carried out by Polly Luther. The plaintiff sold other property for its full value, and gave a warranty deed without his wife releasing her dower ; showing that at the time he considered he had full power and right to dispose of property retained by him without requiring his wife to release what he knew she did not nor would ever claim.

IV. The deed and agreement are to be equitably construed. The real intention of the plaintiff was to give his wife one half of all his property, but to give it to her in such a manner that he should not be called upon to pay her future debts ; still he intended to place the property which he gave her beyond his power to recall it, and beyond his power to repossess himself of

it, unless by means of the provision for attachment inserted in the agreement.

V. The plaintiff is estopped from claiming said premises by his own covenant of warranty in the deed thereof; also by his agreement in the articles of separation, which covenant and agreement were made for a valuable consideration.

VI. James C. Blake took by the conveyance from the plaintiff a legal estate in trust for Polly Luther and her heirs. As the legal estate was in trust, it must be commensurate with the trust, and therefore was an estate in fee simple, which she might lawfully devise. *Newhall* v. *Wheeler*, 7 Mass. 189; 2 Washb. Real Prop. 186, 187; *Oates* v. *Cooke*, 3 Burr. 1684; *Fisher* v. *Field*, 10 Johns. 505; *Gould* v. *Lamb*, 11 Met. 87; *Cleveland* v. *Hallett*, 6 Cush. 407; *Stearns* v. *Palmer*, 10 Met. 32; *Brook* v. *Jones*, 11 Met. 194; *Nightingale et al.* v. *Hidden et al.* 7 R. I. 131.

VII. The plaintiff parted with his entire estate in said premises, and with all his rights therein. During the life of Polly Luther the equitable estate belonged to her; at her decease it belonged to her heirs, without any claim on the part of plaintiff as tenant by the curtesy; for by his agreement, and by the valuable considerations which he had received and acknowledged, he had deliberately waived any claim of any kind upon said premises; and by those very agreements, and by his actions, he is estopped from making any claim. His " intent appears to have been clear and unequivocal to exclude his marital rights." If so, he cannot now set up any claim. *Nightingale et al.* v. *Hidden et al.* 7 R. I. 120.

POTTER, J. It appears that August 14, 1860, Daniel B. Luther and his wife Polly agreed to a separation. A deed of separation containing several covenants was executed, with James C. Blake as trustee, and by another instrument Luther conveyed certain real property to said " Blake, his executors, and administrators," in trust, for said " Polly Luther, her heirs, executors, administrators, and assigns, and for her and their use and behoof forever." Separate conveyances of bank stock and furniture were made to the same effect. The said Polly made a will in 1864, giving this real property to her daughter Harriet, now wife of the defendant, and directing said trustee to convey to her, and died in 1868. In 1869, Blake conveyed the real estate back to Daniel

B. Luther, the plaintiff, who now sues in ejectment to recover it of the defendant, the present occupant.

What estate did Blake, the trustee, take under this deed? Was the legal estate in him, or was the use executed in said Polly? We think that in construing the deed of land, we are to take it in connection with the deed of separation which was executed at the same time and refers to it. The trustee engages to indemnify and hold said Luther harmless from all liability for the debts of said Polly or her daughter; and he is liable for the fulfilment of the covenants in the deed of separation. He must have a sufficient interest in and control over the estate, to carry out that purpose. The trust, too, is for a married person, and expressed to be for her separate use, and this is an additional reason for holding that it is not executed in her. 1 Greenleaf's Cruise, *385, and cases. And we consider, therefore, that during her life, or until she conveys, the trust is not to be deemed a use or trust executed, or a mere dry trust, but that the legal estate was vested in the trustee.

The trustee taking the legal estate on the death of Mrs. Luther, without having disposed of it by deed during life, the necessity for the trustee having the control having ceased, it would either become a dry or passive trust, in which case the nominal legal estate would still be in the trustee, an estate which indeed he might convey, but of which a court of equity would compel a conveyance to the *cestuis que trust ;* or 2d, the trust may be considered as executed in the *cestuis* as soon as the necessity for its being an active trust ceases, viz., on her conveyance or death.

We consider the latter view as the correct one, and as supported by the authorities. See Hill on Trustees, *239, *242; 1 Greenleaf's Cruise, 385, §§ 19, 30.

" In the case of a devise to trustees for particular purposes, the courts will consider the legal estate as vested in the trustees as long as the execution of the trusts require it, and no longer; and will therefore, as soon as the trusts are satisfied, consider the legal estate as vested in the persons who are beneficially entitled to. it." 1 Greenleaf's Cruise, 338, § 29.

The case of *Jones* v. *Lord Say and Seal* is generally referred to as the first case where this was laid down. 1 Eq. Cas. Abr. 383; 3 Bro. P. C. 458. This case has been criticised in some English

cases, and also by Chancellor Harper in *Ex parte Gadsden*, 3 Rich. 468. Lord Kenyon, in *Harton* v. *Harton*, 7 T. R. 648, says the best report of this case is in 8 Viner's Abr. 262; and quite a full report of it is given in Fearne' on Cont. Rem. *52. It was here decided that the estate was in the trustees for the life of a *feme covert*, and was then executed in the heirs of her body.

From the report in Eq. Cas. Abr. it would seem doubtful if the case turned on this point. And some of the other cases often cited have turned on the point whether a fee or fee tail was conveyed under the rule in *Shelley's case*.

In *Harton* v. *Harton*, 7 T. R. 648, 650, decided on different grounds, Lawrence, J., states the case of *Jones* v. *Lord Say and Seal* as deciding the point that the trustees held the estate during the life of the *feme covert*, but the use was on her death executed in the persons entitled to it. Lord Kenyon mentions it as a case by itself, but says that it was recognized by Lord Hardwicke as law in *Bagshaw* v. *Spencer*, 1 Ves. 144.

In *Brown* v. *Whiteway*, 8 Hare, 145, 156, Vice Chancellor Wigram, while following *Harton* v. *Harton*, 7 T. R. 648, as applicable to the case before him, said: " I do not see why in that case it was necessary to hold that the intermediate estates should not be good legal estates."

In the case of *Tucker* v. *Johnson*, 16 Sim. 341, the trust was to A. B. and heirs to the use of a son for life, remainder in trust to apply rents to support son's children during minority, and then to the use of them, their heirs, &c. It was held that the son took the legal estate for life, that the trustees then took a chattel interest during the minority, and that the remainder went to the son's children in fee.

In *Doe, &c.* v. *Barthrop*, 5 Taunt. 382 (A. D. 1814), devise to trustees and heirs to permit woman to hold to separate use for life, and then to use of her appointees by will, &c. The court held that " in this case the trust is sufficiently executed by limiting to the trustees a base fee determinable with the life of M. A. S. The legal estate, therefore, goes over from them when that estate determines."

In *Williman* v. *Holmes*, 4 Rich. Eq. 475, devise to trustees in fee for married daughter for life, then for her husband for life, and then to the use of her appointees by will, and in default

thereof to testator's heir at law. Held, that the trustees took the legal estate for the lives, and then the statute executed the estate in reversion or remainder, subject to be divested by the appointment. " After the execution of the trusts the title passes away from them silently and by operation of law." Ibid. 479. And see *Law* v. *Wilson,* 2 T. R. 444; *Robinson* v. *Grey,* 9 East, 1; *Pearce* v. *McCleraghan,* 5 Rich. 178, 187.

*Ex parte Gadsden,* A. D. 1829, 3 Rich. 467. This was a case in chancery. The trusts in this case were held not executed. Harper, Chancellor, comments on the case of *Jones* v. *Lord Say and Seal,* and other cases, and states the rule thus : " If the gift to the trustee be general, without words of limitation or inheritance, he will be construed to take a chattel interest, a life estate, or a fee, as the purposes of the trust appear to require. But if it be to him and his heirs (provided any estate at all is executed in the trustee) this imports a fee ; though these words may be restrained by other circumstances in the deed or will, which show that the donor or devisor contemplated that the estate should be executed in some subsequent taker, or after some event, or which are inconsistent with the notion of the fee continuing in the trustee."

In *Doe, &c.* v. *Nicoll,* 1 B. & C. 336, Bayley, J : " It may be laid down as a general rule that where an estate is devised to trustees for particular purposes, the legal estate is vested in them as long as the execution of the trust requires it, and no longer ; and therefore, as soon as the trusts are satisfied, it will vest in the person beneficially entitled to it." And in *Doe, &c.* v. *Edlin,* 4 A. & E. 582, Lord Denman says : "·I admit that for a great number of years past the courts have held that trustees take that quantity of interest which the purposes of the trust require ; and the question is not whether the maker of the instrument has used words of limitation or expressions adequate to convey an estate of inheritance, but whether the exigencies of the trust require a fee, or can be satisfied by a less estate." And the latter construction has been put upon various wills, " though in some of them the testator has used words of limitation, or which of themselves alone, if not coupled with other expressions, would seem to carry an estate of inheritance."

In *Doe, &c.* v. *Davies,* 1 A. & E. N. S. 430, Lord Denman says

he does not intend to throw doubt upon the cases relating to the determination of trust estates, but the language of some of them goes too far when they hold the trust ceases on the performance of the trusts in whatever terms the devise is framed; that Holroyd, J., said rightly, that where there are no words in the will which give the trustees any estate beyond the time during which the trust is to be performed, then the case falls within the general rule, that a trust estate is not to continue beyond the period required by the purposes of the trust; and in conclusion he holds that the rule should be narrowed down to cases where it is consistent with the words of the instrument and the apparent intention of the maker, — referring to *Doe* v. *Edlin*, 4 A. & E. 582, 589, and *Doe* v. *Ewart*, 7 A. & E. 636, 666.

Considering therefore the rule to be well settled, and that in this case the trust must be considered as executed in the next taker after the death of the wife, the deed from Blake the trustee conveyed nothing to the plaintiff, and he cannot maintain the action of ejectment.                    *Judgment for defendant.*